UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMRICA, | ) Case No. 1:11-CR-44 |
| Plaintiff, | ) |
| | ) Judge Dan Aaron Polster |
| vs. | ) |
| | ) **MEMORANDUM OF OPINION** |
| AKEEM STAFFORD, | ) **AND ORDER** |
| Defendant. | ) |

Pending before the Court is Defendant Akeem Stafford's Motion for New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (**Doc. # 42**). The essence of the motion is that the Court incorrectly admitted in evidence the results of a gunshot residue test, which revealed the presence of particles on Defendant's hand consistent with him having fired a gun, and expert testimony about that test.

I.

On November 21, 2010, police officer Joe Figula was driving in downtown Elyria when he heard a gunshot.[1] He stopped his car, looked ahead, and saw a man fire two more shots into a nightclub. Officer Figula noticed the shooter was wearing a black zip-up sweatshirt with a white-striped collar and white cursive font on the back. The shooter spotted Officer Figula and started to run. Officer Figula called for back up and gave chase.

---

[1] The following facts are taken from the trial testimony of Officer Figula (trial transcript pgs. 179–274), Sergeant Richard Ellis (pgs. 351–379), and Martin Lewis (pgs. 379–434).

The shooter ran into an alley, across a McDonald's parking lot, and out into traffic. Officer Figula lost sight of him when he ran behind a bank.  Officer Figula got out of his car and walked around the back of the bank where he saw Defendant Akeem Stafford lying prone next to an air-conditioner; he was wearing the same black sweatshirt Officer Figula saw on the shooter.

Officer Figula drew his gun and ordered Defendant to show his hands.  Officer Figula handcuffed him but found no weapon, so he and several officers scoured the area.  They eventually found spent .45 caliber shell casings and a .45 caliber semi-automatic handgun near the area of the shooting.

The officers put Defendant in a police car and drove him to the Elyria police station where he was processed and booked.  The officers subjected Defendant to a Gunshot Residue ("GSR") test and submitted the ballistics evidence, including the gun and shell casings as well as the samples collected from Defendant's hand, to the Ohio Bureau of Criminal Identification and Investigation lab ("BCI").  BCI tested the samples and found six gunshot residue particles, that is, particles from a bullet that disperse when a gun is fired.

On February 1, 2011, Defendant was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Defendant pled not guilty and a trial was scheduled.  Before trial Defendant filed a motion in limine to exclude the results of the GSR test and the testimony of an expert witness regarding those test results (Doc. # 23).  The Court denied Defendant's motion and the evidence was admitted (Doc. # 28).  After a two-day trial, the jury returned a verdict of guilty.

Defendant now seeks a new trial and has filed a motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure, arguing that the GSR test and expert testimony were

wrongly admitted.

## II.

Under Rule 33 of the Federal Rules of Criminal Procedure, the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). The rule does not define the phrase "interest of justice." It is, however, widely agreed that the interest of justice standard allows the grant of a new trial where substantial legal error has occurred. United States v. Munoz, 605 F.3d 359, 373 (6th Cir. 2010). The defendant bears the burden of proving that a new trial should be granted. United States v. Davis, 15 F.3d 526, 531 (6th Cir. 1994). The decision whether to grant a new trial is left to the sound discretion of the court. United States v. Wheaton, 517 F.3d 350, 361 (6th Cir. 2008). Motions for a new trial are disfavored and should be granted with caution. United States v. Willis, 257 F.3d 636, 645 (6th Cir. 2001).

Defendant argues that the GSR test and the expert testimony should have been precluded under Rule 702 of the Federal Rules of Evidence because serious deficiencies exist in the forensic methodology used to collect gunshot residue samples. Under Rule 702, an expert witness may offer scientific, technical, or other specialized testimony only if (1) the expert is qualified; (2) the testimony is relevant; and (3) the testimony is reliable. In re Scrap Metal Antistrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008). In ruling on the admissibility of expert testimony, the role of the trial court is not to determine whether an expert's opinion is correct but rather to determine whether it rests upon a reliable foundation, as opposed to unsupported speculation. Id. at 529–30. The trial court acts as gatekeeper, admitting expert testimony that is reliable and leaving to the jury the question of how much weight, if any, should be accorded to

the expert's conclusions. Exclusion of expert testimony is the exception, not the rule. Id. at 530.

Defendant does not challenge the expert's qualifications, the relevancy of the testimony, or the general scientific validity of GSR testing. (See Doc. # 23). Instead, Defendant challenges the accuracy of the test results. Defendant argues that GSR testing will not reveal whether an individual fired a gun, was present when someone else fired a gun, or was otherwise in an area where gunshot residue was present. Of course the presence of gunshot residue particles cannot distinguish between shooters and bystanders. But this is not a challenge to the methodology of the testing itself; it is an argument challenging the conclusion that positive test results are evidence that Defendant fired the gun and therefore possessed it.

The Court's role in considering a Rule 702 objection is to focus "solely on principles and methodology, not on the conclusions that they generate." Daubert v. Merrel Dow Pharms., 509 U.S. 579, 594 (1993). The determination that an expert's testimony is reliable does not in any way concern the accuracy or truthfulness of the testimony. In re Scrap Metal, 527 F.3d at 529. Indeed, once the principles and methodology are found to be admissible, the conclusions they generate are to be tested in the crucible of an adversarial trial, challenged on cross-examination or controverted by a competing expert, and ultimately evaluated by the jury. As the Court noted at trial, Defendant's argument about the strength of the expert's conclusion goes to the weight, not the admissibility, of the testimony. (Trial Tr. Pg. 142).

Next, Defendant argues that significant questions remain in the GSR community about the minimum number of particles that must be present in a sample to warrant the conclusion that the sample tests positive for gunshot residue. Defendant avers–without citation to a source–that there is no consensus in the GSR community on the minimum number of particles. To the

contrary, in his motion in limine to exclude the gunshot residue expert, Defendant quoted several key findings from a 2005 Gunshot Residue symposium held by the Federal Bureau of Investigations in support of his position. One of the findings reveals that there *is* a consensus on the minimum number of particles: "Most experts felt that even one particle is enough for a 'positive' result." (Doc. # 23, at 4). The GSR test in this case revealed *six* particles on Defendant's hand.

Defendant also criticizes the collection technique used by the police officers. As Defendant points out, after the officers found Defendant in the alley, they did not place plastic bags over his hands but handcuffed him and placed him in the back of a police cruiser. The officers tested him for gunshot reside only after he had been in the booking room at the police station for several minutes. No doubt this created the risk of inadvertently transferring gunshot residue. It is possible that the officers, in placing handcuffs on Defendant, transferred residue onto his hands. It is also possible that residue found its way onto Defendant's hands while he was in the backseat of the police cruiser or at the police station. But these points, while valid, attack the credibility and accuracy–not the reliability–of the expert's findings and go to the weight of the GSR results. See United States v. Pearsall, 492 F. Supp. 2d 432, 439 (D. Del. 2007) (finding that the argument that police officers failed to place a bag over the defendant's hands before taking him to the police station went to the weight of the GSR evidence, not its admissibility). These are attacks to be made at trial: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. In fact, Defendant made these points at trial during cross-examination.

Finally, Defendant argues that even if the evidence is admissible under Rule 702 it should still be excluded under Rule 403.  Rule 403 provides that evidence that is otherwise admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  The probative value of the GSR test is that it tends to prove Defendant fired the gun.  According to Defendant, the substantial danger of unfair prejudice arises because the results of a GSR test permit several conclusions: the presence of bullet particles on Defendant's hand could mean that he either fired a gun, was present when someone else fired a gun, or was otherwise close to gunshot residue.  These criticisms are valid, and Defendant had an opportunity to present them to a jury, but they in no way suggest that the GSR test results are unfairly prejudicial.

### III.

The interest of justice does not compel a new trial.  Accordingly, Defendant's Rule 33 motion for new trial is **DENIED**.

**IT IS SO ORDERED.**

                                         /s/Dan Aaron Polster 10/19/11
                                        **Dan Aaron Polster**
                                        **United States District Judge**